## HUGUENIN v. COURTENAY.

1. A finding of fact by the Circuit judge in an action for specific performance sustained, such finding not being shown to have been without evidence to support it, or manifestly against the weight of the evidence.

2. After contract for the sale of a leasehold interest in land to commence *in futuro*, but before the purchaser had right of entry, or was entitled to the possession and use of the property, a considerable part of the land was washed away by an ocean storm. *Held*, that the loss must fall on the vendor, who was still the owner, and that he was not entitled to a specific performance of the contract.

3. Where one agreed in July to sell his leasehold interest in land at a stated price in cash "possession to be given November 1, provided I can obtain the consent of the present lessee," the agreement was not an absolute contract of sale, but an executory agreement to be completed on November 1.

Before WALLACE, J., Charleston, July, 1883.

This was an action by Cornelius J. Huguenin against Wm. A. Courtenay, commenced in 1882.

The Circuit decree was as follows:

This action was brought to compel the specific performance of the following contract: "I hereby agree to sell you lot on front beach of Sullivan's Island, known as Lot No. 16, on a rough

plat of Moultrieville, for the consideration of $300, *cash;* possession to be given November 1, 1881; provided I can obtain the consent of the present lessee." This contract was made between the parties to this action in July, 1881. The defendant, the purchaser, refuses to perform because, as he alleges, he desired to build a dwelling-house on the lot, and that its suitability for this purpose was destroyed by the destruction of a large proportion of the lot by the great storm of August, 1881.

The controversy between the parties involves, first, a question of fact: to what, if any, extent had the premises been injured by the storm? It will be observed that the terms of the contract refer to "a rough plat of Moultrieville" for the description and location of lot No. 16. There was no direct proof of the dimensions of lot 16 as laid down on this plat. The statute (*Gen. Stat.*, p. 30, § 71) provides that the lots on Sullivan's Island shall be of the dimensions of one-half acre. It may be, therefore, safe to infer that this lot was laid down according to the statutory provision, and was a half acre lot—that is, a lot of that size above high water mark. For it is impossible to conceive that in providing that the lots on Sullivan's Island shall consist of half an acre, the legislature contemplated that those lots on the front beach should include as part of their dimensions land covered twice daily with the waters of the sea.

The contract then relates to a lot of the dimensions of half an acre. There can be no doubt from the testimony that on the 1st of November, 1881—the time when, according to the contract, the delivery was to be made—lot No. 16 was of much smaller dimensions than that. Nor is there any doubt that this reduction in size had been effected by the washing away of sand and the consequent lowering of the level of the surface and the covering of the lot by the waters of the sea. And that all this was the result mainly of the action of the winds and waves during the great storm of August of that year.

As to the extent of the reduction, there is some conflict in the testimony, but I think it may be fairly gathered from a comparison of the statements of the witnesses that half, or nearly half, of the lot was under the sea. While the part of the lot remaining above high water would probably furnish space enough upon

which a dwelling-house and out-buildings might be built, yet the weight of the testimony is to the effect that, by its reduction in size, the value of the lot as a building site has been materially impaired, and rendered unsuitable for the purposes of the defendant. It has been made impossible for him to conform to the requirements of the statute as to the size of lots upon which dwelling-houses may be erected. *Gen. Stat., supra.* It must be borne in mind that that part of the lot which is covered by the sea is, for that reason, regarded by the law as destroyed as property. "The sea makes all that it covers common," hence in this case there is an actual destruction, not physical—for the land remains under the sea—but "legal and beneficial." *Rol. Abr.*, 236; *Coogan* v. *Parker*, 2 *S. C.*, 268.

Notwithstanding the substantial impairment of the value and fitness of the lot, to the extent above described, as a building site, is the defendant still bound to perform his contract? The answer to this question depends upon the nature of the plaintiff's tenure at the time of the sale. If at that time the plaintiff had held a freehold estate in the land, the contract would have operated to transfer to the defendant an equitable title to the fee. In the case of *Landrum* v. *Hatcher*, 11 *Rich.*, 54, it was held that land bid off at sheriff's sale, after the purchaser had made his will, goes not to the devisee or legatee, but to the heir at law, to whom the sheriff's deed should be made. The decision is rested on the ground on which Lord Eldon rested his decision in *Paine* v. *Meller*, 6 *Ves.*, 349, to wit: "That when a contract is made for the sale of land, the vendor is in equity immediately deemed a trustee for the vendee of the real estate, and the vendee is deemed the trustee for the vendor of the purchase money. Under such circumstances, the vendee is treated as the owner of the land, and it is devisable and descendible as his real estate."

The reason, probably, for the rule is, that when a contract for the sale of land is made, the transfer of a fee is contemplated by the parties. By such a contract in writing an equity in the fee can be, and is, actually transferred at the time to the vendee. The fee and the use being divisible, the fee may immediately pass, while the use, by stipulation, may remain in the vendor, or in his lessee. The land, to all intents and purposes, has become

by the sale the property of the vendee, notwithstanding the use may be temporarily the right of another.

In this case the plaintiff did not have a freehold in the lot of land which was the subject of the contract. The statute enacts: "The present owners of lots on Sullivan's Island, wherever dwelling-houses have been erected, or such citizens of the state as may hereafter build dwelling-houses upon the said island under the license granted by the preceding section, shall be taken and deemed to have, and shall enjoy, the same rights, titles, and interests as tenants from year to year in and to the lots now owned by them respectively, upon condition, nevertheless, that they shall deliver up the same when demanded by the governor of this state for the time being. * * * And the titles thereto shall be assignable, transferable, transmissible, and distributable as estates for years," &c. *Gen. Stat., supra.*

This statute allows no greater than a leasehold estate in Sullivan's Island lots. Such an estate consists in the use and possession of the land. 4 *Kent,* 85. It is personalty going to the administrator and not to the heir. No estate before entry or term commences. 1 *Wash. Real Prop.* (4th ed.), 439, 440, 442, 604. So at the time of the contract between the parties to this action no fee passed to the vendee, for that was in the state. No equity was acquired by the purchaser that made the land actually his. The leasehold estate, which was all that the plaintiff could have in the lot, could not at the time of the contract pass to defendant. For such an estate consists in the use and possession, and that, by the terms of the contract, was to remain in lessee of plaintiff at least until November following. At the time of the contract, the defendant acquired an equity to compel the plaintiff to deliver all he bought at a future day. Before that day the storm destroyed lot No. 16, as represented on the plat referred to in the contract, and it was no longer possible for plaintiff to deliver possession of the lot as bought and sold. The storm having put it out of the power of plaintiff to perform, the equity of defendant ended, for a Court of Equity will not undertake to compel the performance of an impossibility. 3 *Mees. & W.,* 78.

In that case plaintiff was lawfully in possession of a residue

of a term for six years of and in a certain dwelling-house and premises, &c., and of certain furniture, &c., on the same. The plaintiff agreed to sell and the defendant to buy the lease, &c., and it was agreed that defendant should have possession on or before the 1st of January afterwards, on payment of price, &c. On the evening of the day of agreement the principal dwelling-house, &c., was destroyed by fire. Plaintiff sued for price. The defendant pleaded non-fulfilment of agreement and breach of covenant for possession. The court gave judgment for the defendant. Lord Abinger, C. B., said: "I think upon the form of the pleadings the plaintiff was certainly bound really to complete the contract, and that in the very terms stipulated for. Whereas what had taken place, the goods in a great measure being destroyed by fire, put it out of her power to do so, and I think, therefore, that the contract could not afterwards be binding on these parties." The other judges concurred, upon the ground that it was impossible for the plaintiff to complete the contract by reason of the destruction of the property, and the contract was therefore rescinded.

In this state, even after a leasehold estate commences, and the tenant is in possession, a destruction of the subject-matter of the lease by act of God or public enemy, rescinds the contract, and the parties are no longer bound. *Bayly* v. *Lawrence*, 1 *Bay*, 491; *Ripley* v. *Wightman*, 4 *McC.*, 448; *Coogan* v. *Parker*, 2 *S. C.*, 259. In the case of *Ripley* v. *Wightman, supra*, the following language from 6 *Bacon*, page 50, is cited as ground for the decision: "It seems to be extremely reasonable that if the use of a thing be entirely lost or taken away from the tenant, the rent ought to be abated or apportioned; because the title to the rent is founded on the presumption that the tenant enjoys the thing during the contract; and, therefore, if part of the land be surrounded or covered by the sea, this being the act of God, the tenant shall not suffer by it; because the tenant, without default, wants the enjoyment of part of the thing which was the consideration of his paying the rent."

It is not necessary to point out the distinction between the sale of a leasehold estate and the sale of specific personal chattels, as to the time and conditions of the transfer of the property.

It is ordered and adjudged that the complaint in this action be dismissed.

The plaintiff appealed to this court upon the following exceptions: 1. Because his honor erred in holding that the building of a house upon a Sullivan's Island lot of less than a half acre, would not be in conformity to the provisions of the statute regulating the tenure of such lots. 2. Because his honor erred in not holding, from the evidence, that there was sufficient of said lot left, in November, 1881, upon which the plaintiff could have erected a house such as is usually built upon Sullivan's Island lots, and which would have conformed to the said statutes in such case made and provided. 3. Because his honor erred in not holding that the plaintiff could have substantially performed his agreement to deliver the lot at the time mentioned in the contract, and that the defendant should have accepted the said lot. 4. Because his honor erred in holding that the title to the said lot did not pass to the defendant at the time the contract between the plaintiff and defendant was made, to wit, July 25, 1881.

*Mr. S. Lord, jr.,* for appellant.

[Omitting the argument on the facts.] This was an absolute, unconditional contract of sale to be carried into execution immediately, for a price to be paid *in cash,* the vendor retaining possession until November. The tenure of these lots are prescribed by statute. *Gen. Stat.,* § 71; 7 *Rich. Eq.,* 344. The Circuit judge was certainly wrong in resting his decree upon the ground that the law required half acre lots for buildings. Since the act of 1857 these lot owners are tenants from year to year, but with leases renewable at pleasure. Their interest is practically a fee. This leasehold estate was sold by plaintiff to defendant; it was a contract of sale, not of leasing; and the question here is one of sale, and not between landlord and tenant, as it would be if the state were suing for her annual rent of one penny. Therefore the authorities cited in the Circuit decree do not apply here. Had it been a freehold, the loss would have fallen on defendant. *Sugd. Vend.,* Ch. V., § 2; 6 *Ves.,* 349; 2 *Hill Ch.,* 421; 11 *Rich.,* 54. The same rule applies in the sale of chat-

tels. *Blackb. Sales*, 147–149; *Benj. Sales*, §§ 311–314. The Circuit judge erred in holding that a leasehold estate could not pass at the date of the contract, because that such an estate consists in use and possession, and they were to remain in plaintiff's lessee until November. For a term of years may be created to take effect at a future day, the interest of lessee being meantime an *interesse termini*. 1 *Wash. Real Prop.*, 293, 295, 296; *Tayl. Land & Ten.*, § 15; 18 *Penn. St.*, 60. But whatever plaintiff's interest, it was assignable, and the title to that interest passed to defendant at the date of the contract. From that time it was at his risk. *Bacon* v. *Sampson*, 3 *Mees. & W.*, 78, is not authority on the point for which invoked. In that case title remained in the plaintiff, and no excuse was pleaded. In Massachusetts property remains in the seller after the bargain for sale, but South Carolina, following the English rule, holds that it is in the buyer.

*Messrs. Bryan & Bryan*, contra, cited the authorities in the Circuit decree, and also *Pow. Cont.*, 147; 2 *Bay*, 276; *Gen. Stat.*, §§ 71, 72; 5 *Barb.*, 601; 113 *Eng. C. L.*, 824; 107 *Mass.*, 514; 70 *Me.*, 288.

September 9, 1884. The opinion of the court was delivered by

MR. JUSTICE McIVER. The plaintiff seeks, by this action, to enforce the specific performance of a contract for the sale of a house and lot on Sullivan's Island, the terms of which are to be found in the correspondence which passed between the parties. The plaintiff, by letter dated July 25, 1881, addressed to defendant's agent, says: "I hereby agree to sell you lot on front beach, Sullivan's Island, belonging to me, and known as No. 16 in a rough plat of Moultrieville, and purchased by me from E. M. Jervey March 21, 1880, for the consideration of $300 *cash*; possession to be given November 1, 1881, *provided* I can obtain the consent of the present lessee." To this letter the defendant replied by letter of same date, confirming the negotiation made by his agent, and adding these words: "I had hoped to have got immediate possession, intending to use the small building for

my bathing this season; but as I will not build before November, I will arrange otherwise."

The defendant in his answer admits the making of the contract as above stated, but denies the allegation of the plaintiff, that he "has always been, and still is, ready and willing to perform the agreement on his part, and, on being paid the purchase money, to convey the said lot of land to the defendant, and· to let the defendant into possession thereof from the time in the agreement specified." And he also denies the·further allegation, "that on or about the first day of November the plaintiff duly offered to make title to the said land to the defendant pursuant to the agreement; but the defendant then, and ever since, has refused to accept the same and to pay the purchase money." On the contrary, the defendant avers that the plaintiff "was then, has been ever since, and is now unable to make title and convey the said lot of land to the defendant pursuant to said agreement," by reason of the fact that after the making of said agreement, and before the· said first day of November, the premises in question were in part destroyed by a storm in August, 1881, and so large a part of said lot covered by the sea as to render it wholly unfit for the purposes for which defendant proposed to purchase.

On the trial below two questions were raised, one of fact and the other of law. 1. Whether the lot was injured to such an extent by the storm of August, 1881, as to render it unfit for the purposes for which the defendant proposed to purchase. 2. If so, does this relieve the defendant from the liability to perform the contract? The Circuit judge answered both of these questions in the affirmative, and accordingly rendered judgment dismissing the complaint. From this judgment the plaintiff appeals upon the several grounds set out in the record, which, however, substantially raise only the two questions above stated.

The first being a question of fact, we are bound, under the well settled rule, to accept the conclusion reached by the Circuit judge, unless it is shown to be without any evidence to support it, or manifestly against the weight of the evidence. The testimony as to the extent of the injury done to the premises by the storm was certainly conflicting, and it is quite clear that we cannot say that the conclusion reached by the Circuit judge is with-

out any evidence to support it. Nor can we say that his conclusion was manifestly against the weight of the evidence. There was conflict in the testimony and it was for the Circuit judge to weigh it, and if the conclusion which he has reached can be supported by the testimony, we will not interfere, even though there may be other testimony in the case pointing to a different conclusion. We are not to substitute our judgment for that of the Circuit judge as to the comparative weight of the testimony, but we are simply to inquire whether manifest error has been shown. This, we think, has not been done, but, on the contrary, a review of all the testimony satisfies us that the conclusion reached by the Circuit judge may well be supported. *Gary* v. *Burnett*, 16 *S. C.*, 632.

This brings us to the question of law involved in the case, and the answer to that depends upon the inquiry, who was the owner of the property in question at the time the destruction or injury took place; for it is quite clear that whoever was the owner at the time must bear the loss. To solve this inquiry it is necessary for us to consider the nature of the property in question. It is conceded to be a mere leasehold estate, and not an estate of freehold. Hence the practical inquiry in this case is, whether the ownership of the property in question was transferred from the plaintiff to the defendant at the date of the contract above set forth, to wit, July 25, 1881. According to the authorities, the title or estate in property of the character of that now under consideration does not pass until the leaseholder's term commences and he has taken, or is entitled to take, possession. The very nature of such an estate consists in use and possession, 4 *Kent Com.*, 85; 1 *Washb. Real Prop.*, *Bk.* 1, *Ch.* 10, § 1.

Now as title or estate constitutes what we understand by the term ownership, it would seem to follow that, as no title or estate passed out of the plaintiff and into the defendant at the date of the contract, inasmuch as by its terms the defendant then had no right of entry and no possession or use of the property, the ownership remained in the plaintiff, and if so, the loss must fall upon him. It is true that an estate for years may be created to commence *in futuro*, and that in such a case the lessee acquires what is called an *interesse termini*, but the title or estate, that is, the

ownership, must remain in the lessor, and until the title or estate of the lessee commences, the property is at the risk of the lessor, because until that time he is the owner.

In this state the doctrine has been established, that "where there is a substantial destruction of the subject-matter, out of which rent is reserved in a lease for years, by an act of God, or of public enemies, the tenant may elect to rescind, and on surrendering all benefit thereunder shall be discharged from the payment of rent." *Coogan* v. *Parker*, 2 *S. C.*, 259, and the cases there cited. Now if this is the rule to be applied for the relief of one whose term or estate has actually commenced, there would seem to be much stronger reason for applying the same rule for the relief of one whose term or estate has never commenced. The fact that one is a tenant and the other a purchaser can make no difference in the principle. In fact, a tenant is a purchaser of the use and possession of the demised premises for the term of his lease.

But in addition to this, we think that under a proper construction of the terms of the contract in this case it amounted to nothing more than an executory agreement for the sale of a leasehold estate, the term of which was to commence, and possession to be given, at a future day. The very fact that it contained a condition—"provided I can obtain the consent of the present lessee"—shows conclusively that neither of the parties could have regarded the contract as an absolute sale at the time. It is clear from the defendant's letter accepting the proposition to sell, that he expected and desired to obtain possession at least as early as the first of November, 1881, and if he could not do so, he would not be bound, and whether he could do so depended upon the consent of a third party, the then "present lessee" of the plaintiff; and it is, therefore, impossible to suppose that either party supposed that they were *then* making an absolute contract of sale. When the lease of the *then* lessee of the plaintiff would expire, and whether his consent had been obtained before or after the partial destruction of the premises by the storm in August, or whether such consent ever was obtained, does not appear; and certainly until such consent was obtained, it could not be said that there was any binding contract between the parties.

The fact that the consideration was to be paid in *cash* cannot affect the question, for certainly it cannot for a moment be supposed that the parties intended by the word "cash" that the consideration should be paid at the date of the contract, for at that time the condition upon which it depended had not been performed, as the consent of the "present lessee" had not then been obtained. The true construction is, that the cash was to be paid when the term commenced and when possession was to be delivered. And this is the construction placed upon it by the plaintiff himself, for in his letter to the defendant and in his complaint he only demands interest from the first of November, 1881, whereas, if the cash was to be paid at the date of the contract, he would have been entitled to interest from that time. It is true that the plaintiff in his complaint alleges that he always had been and still is ready to perform the agreement on his part, and this might be regarded as necessarily implying that he had obtained the consent of his then lessee; but this allegation is distinctly denied in the answer, and we find no testimony to sustain such allegation.

As to the first ground of appeal, which alleges error on the part of the Circuit judge in holding that the reduction of the size of the lot below one-half of an acre rendered it impossible for the defendant to conform to the requirements of the statute in that respect, we do not deem it necessary to say anything. For, even conceding that there was error in this respect, that was only one of the reasons assigned for the judgment below, and as such judgment, as we have seen, may be supported upon other grounds, such error, if it be one, becomes immaterial. We are satisfied that the plaintiff is seeking to enforce the specific performance of a contract when he himself is unable to perform his part of the agreement, and that there was, therefore, no error in the judgment dismissing the complaint.

The judgment of this court is that the judgment of the Circuit Court be affirmed.