Complainant's bill is for the construction of the will of Jacob F. Rieder, deceased, and determination of the rights of the parties.
Testator died seized of several parcels of real estate worth $50,000 and personalty of $30,000. By his will he devised and bequeathed all his residuary estate, after payment of debts, one-third to his son, one-third to his daughter and one-third to his executor in trust to pay the income to Mary Domagauer for her life, remainder to the son and daughter aforesaid. The executor was given power of sale over all the real estate.
Some time after the execution of the will, testator married the said Mary Domagauer, and she survived him as his widow. She and the son and the daughter are the defendants. The question sought to be determined by complainant was whether the widow must elect as between dower rights and testamentary provisions. The widow answered and *Page 169 
counter-claimed, also asking for determination of the rights of the parties.
On the day of the hearing the parties agreed upon a settlement of the matters in dispute and executed a written agreement under seal, and entitled in the cause. This was announced in open court by counsel for all the parties, and the agreement was read into the stenographer's notes. No order or decree of any kind has been entered. The agreement reads as follows:
"This agreement of settlement made this tenth day of January, 1924, between William J. Boehm, executor of the first part, and Mary Domagauer Rieder of the second part and William J. Rieder and Emma Davis of the third part.
"The above cause shall be settled and the rights of the parties in and to the estate of the decedent are hereby settled as follows:
"1. There shall be paid to Mary Domagauer Rieder the sum of twenty thousand ($20,000.00) dollars in full settlement of all her rights and claims against the estate of the testator under the last will and testament and otherwise, excepting as hereinafter stated.
"2. In consideration of said sum said Mary Domagauer Rieder is to execute to said executor or the parties of the third part an assignment of her right, title and interest in and to the life estate devised to her by the will of said testator, and to also execute a deed of conveyance of all her right, title and interest and dower in and to the lands and premises of which said testator died seized.
"3. Said Mary Domagauer Rieder is to have the right to remain in possession of the homestead property to the first day of April, 1924, and if she elects so to do is to execute a lease at the nominal rental of one dollar.
"4. Said Mary Domagauer Rieder shall have the option for a period of ten days to determine whether, as a part of the consideration of twenty thousand ($20,000.00) dollars above provided, she shall accept a conveyance of the homestead property at the agreed price of eleven thousand ($11,000.00) dollars and of the household furniture at the agreed price of four hundred ($400.00) dollars.
"5. In the event of the said Mary Domagauer Rieder exercising said option in writing within said period of ten days, the balance shall be paid to her in cash as hereinafter provided.
"6. The said Mary Domagauer Rieder is to give credit upon this settlement for the sum of seven hundred and sixty-four ($764.00) dollars heretofore collected by her upon insurance premium or for insurance benefits.
"7. In the event of Mary Domagauer Rieder electing not to take the homestead and household furniture, then there shall be paid to her the sum of ten thousand ($10,000.00) dollars within thirty days from this date, crediting thereon the insurance moneys already received *Page 170 
by Mrs. Rieder, and the balance of ten thousand ($10,000.00) dollars upon her surrendering to the executor the possession of said homestead property and the household furniture, which shall be on or before April 1st, 1924.
"8. * * * * *
"9. In the event of the said Mary Domagauer Rieder electing to have and receive the homestead and household furniture as a part of the consideration, then the balance of the amount of settlement shall be paid to her on or before April 1st, 1924.
"10. It is also understood and agreed as part of this settlement there shall be paid to the Honorable Abe J. David, solicitor of Mary Domagauer Rieder, a counsel fee of five hundred ($500.00) dollars chargeable against the estate.
"11. The parties further agree that, if necessary to carry out this settlement, a decree may be entered in the above-entitled cause without costs to either party as against the other.
"IN WITNESS WHEREOF, The parties hereto have set their hands and seals the day and year first above written.
 WILLIAM J. BOEHM, Seal. WILLIAM J. RIEDER, " EMMA S. DAVIS, " MARY D. RIEDER, ""
An affidavit has now been filed by the solicitor of the widow, setting forth the death of the widow intestate on March 5th, 1924, leaving her mother, Pauline Domagauer, and her three brothers, Albert, Paul and John, as her heirs-at-law and next of kin, and the appointment and qualification of Paul as her administrator, and further setting forth that on January 21st, 1924, the widow had notified the other parties of her election to take the homestead property under the settlement agreement, but that her illness and death had prevented the consummation of the settlement agreement.
On this affidavit application is made for an order "that the cause shall proceed at the suit of the complainant and against the surviving defendants, and amending the record and proceedings so that the said Paul Domagauer, administrator, * * * and Pauline Domagauer, Albert Domagauer, John Domagauer and Paul Domagauer shall be named in the cause as defendants in the place of the said Mary D. Rieder, deceased, and, further, that a final decree may be stated and entered in the cause in accordance with the terms of the settlement agreements," which, as will be noted, contains *Page 171 
a provision that, "if necessary to carry out this settlement, a decree may be entered" in this cause.
Passing for the moment the first phase of the application, and assuming that the new parties have been substituted in the place of the widow, the second phase of the application, as it appears from the briefs filed on the motion, is essentially for a decree for specific performance of the executory provisions of the settlement agreement. That phase of the application must be denied, for such a decree, of course, cannot be made upon the record as it now exists; the pleadings deal only with the question of construction of the will. Before such decree as the one now sought could be made, it will be necessary for supplemental answer and counter-claim to be filed, setting up the circumstances occurring since the original pleadings, with opportunity for answering pleadings and a hearing.
On the present record the administrator of the widow is entitled to the usual order to revive, substituting him in her place, for the cause of action has not necessarily abated by the death of the widow. True, her dower and her equitable life estate have terminated by her death, but (so far as the present record shows, at least) the question would remain with regard to the interests up to the time of her death, and as to this the administrator might be entitled to collect amounts due and not received by the widow, or he might be liable to repay, as a debt of the widow, overpayments received by her.
The widow's heirs-at-law obviously would have no right to come in under this aspect of the matter.
So far as they are concerned, however, this application may be treated as one made under paragraph 3 of rule 13, for leave to be made parties so that they may file supplemental answer and counter-claim under rules 28 and 63.
Under rule 13 the right to intervene as a party is made conditional upon the applicant's having "an interest or title which the decree will affect." This, naturally, does not mean that there must be a thorough and complete hearing and final and absolute determination that he has such an interest *Page 172 
or title, prior to admitting him as a party. Such a course would not be practicable, and, indeed, in many cases (as in the present case) would require a preliminary determination of the very issues which the applicant seeks to litigate. The rule does contemplate, however, that not every one shall be admitted as a party simply because he makes application. It contemplates that no such permission shall be given where the applicant's claims are clearly groundless; he must make a reasonable prima facie
showing of a claim that he ought equitably to be permitted to have tried out.
Some scrutiny of the claim of the widow's representatives is necessary therefore at the present time. Both sides have argued the case as on the merits, and the contention of the testator's executor and children is that under well-settled principles specific performance cannot be decreed. If that clearly appear, then the application should be denied.
Examining the settlement agreement, and taking into consideration the determination of its contingent provisions, resulting from the exercise by the widow of her option, it will be seen that it is essentially one for the purchase and sale of real estate on both sides. Mary Rieder is to assign and convey all her equitable life interest in testator's estate and the dower additionally claimed by her in testator's realty, and is to receive in exchange a conveyance of the "homestead" property, and $7,836 in cash.
The contract is executory on both sides. It was a contract duly executed in the sense that it had become complete and binding, but it was executory as to the performance of its provisions. The widow had not received payment, nor had she assigned or conveyed her life estate or dower interest. All those things, as the contract says, were to be done in the future.
The things which are, by the agreement, to be conveyed by the widow, are interests (one legal and one equitable) in real estate terminating at her death — life interests only. Performance on both sides was to take place April 1st. Prior to that date the widow died and her equitable life estate and dower interest were both thereby extinguished. There is *Page 173 
nothing left which her heirs or legal representatives can convey in her place and stead.
It is contended therefore on behalf of testator's children that performance of the agreement on the part of the widow, or her representatives, has become impossible, because of the complete destruction of the subject-matter, and, in consequence, there can be no decree for specific performance against testator's children and executor, performance having become impossible on the one side, performance cannot be required of the other party.
Where there are mutual promises to be performed in future, performance on one side is a prerequisite for performance on the other, if expressly or by implication so provided in the contract. United and Globe Rubber Manufacturing Co. v. Conard,80 N.J. Law 286 (at p. 293). The settlement agreement contains no such express provision, but it might be held to be implied. My recollection is that it has been held in this state that where the contract of sale does not make either conveyance or payment a conditional precedent to the other, both must be deemed to be intended to be concurrent acts. It is, of course, a well-established principle that a complainant seeking specific performance must show that he has performed, or has been and still is ready and willing to perform, on his part.
It is held, however, that destruction of the subject-matter of a contract excuses performance. This principle is an exception to the general principle as quoted in Middlesex Water Co. v.Knappman Whiting Co., 64 N.J. Law 240 (at p. 249), that "where there is a positive contract to do a thing not unlawful, the contractor must perform or pay damages for not doing it, although, in consequence of unforeseen accidents, the performance of his contract has become unexpectedly burdensome or even impossible." Citing Poll. Cont. 362.
Would not the application of this general rule of law in the present case require complainant to pay, particularly in view of the fact that the death at any time of the life tenant and dowress might reasonably have been anticipated by complainant, *Page 174 
as at least a very possible occurrence? Moreover, have they not, in effect, by such death, received essentially what they sought, to wit, the removal of these outstanding estates or interests as encumbrances on their absolute ownership?
Going back to the exception to this general rule, it is stated in Middlesex Water Co. v. Knappman Whiting Co., supra, quoting from Taylor v. Caldwell, 3 Best S. 826, "where, from the nature of the contract, it appears that the parties must, from the beginning, have known that it could not be fulfilled unless, when the time for the fulfillment of the contract arrived, some particular, specified thing continued to exist, so that when entering into the contract they must have contemplated such continued existence as the foundation of what was to be done," performance is excused if the thing be destroyed. This has been quoted with approval by our supreme court in Perlee v. Jeffcott, 89 N.J. Law 34, and Gouled v.Holwitz, 95 N.J. Law 277. Even under this exception, the question still recurs, as above mentioned, Has not the contract been substantially fulfilled, in so far as concerns what complainants were to receive?
As to personal property, this principle is stated in35 Cyc. 246, where the sale is of specified goods which, without the seller's fault, are lost or destroyed before the day of delivery, the seller is excused from delivery and the buyer from obligation to pay. It is, at least, interesting in this connection to note that our Sales act (4 Comp. Stat. p. 4645) provides in section 22 that, unless otherwise agreed, the goods remain at seller's risk until the property therein has been transferred to the buyer; and in section 18, that the property in the goods is transferred to the buyer at such time as the parties intend it to be transferred.
Two cases cited by complainants seem by analogy pertinent to the case at bar, the English case of Taylor v. Caldwell, 3Best S. 826, and Huguenin v. Courtenay, 21 S.C. 403;53 Am.Rep. 688. In the former defendant contracted to lease a music hall to plaintiff for a series of concerts. Before the commencement of the term the hall burned down *Page 175 
accidentally. Defendant was held excused from performance and under no liability to plaintiff, on the exception rule above mentioned. In the Huguenin Case plaintiff contracted to sell defendant a leasehold interest, to commence in future, in a seashore lot, which was partly washed away by a storm prior to the date for consummation. It was held that the property was at the risk of plaintiff, and specific performance was denied to him.
On the other hand, Fry Spec. Perf. (6th ed.) 431, says, in effect, that it is now clearly recognized and well established in England, that when the contract of sale has been completely made, "the thing sold is at the risk of the purchaser, who must bear all subsequent losses, and is entitled to all subsequent gains; subsequent events, therefore, can neither determine the contract nor give either party a right to resist its performance," citing numerous cases.
Moreover, it has been decided by this court, in Cropper v.Brown, 76 N.J. Eq. 406, that the destruction of buildings between the making of contract for conveyance and the date set for consummation, will not excuse the purchaser from performing the contract; that the equitable title is transferred to the purchaser on the making of the contract, and as the equitable owner the purchaser takes the benefit or stands the loss that may accrue thereafter.
The rule thus laid down is the logical, and, it would seem, the necessary consequence of the principle of equitable ownership by a purchaser, and this latter principle is firmly established in this state as to sales of real estate. See Haughwout v.Murphy, 22 N.J. Eq. 531 (at pp. 546, 547), and among the more recent cases, McVoy v. Baumann, 93 N.J. Eq. 638 (at p.642).
I am unable to see any logical basis for any distinction in principle in this behalf as between contracts for the sale of lands in fee-simple and contracts for the sale of any other interests in land, or, indeed, contracts for the sale of personal property. The jurisdiction of equity to decree specific performance of a "contract for the purchase or sale of personal property is too well settled to be doubted" (Law v. *Page 176 Smith, 68 N.J. Eq. 81 (at p. 83), and cases cited, and while that jurisdiction will not be exercised in every case by any means, when it is exercised, it seems to me that the same principles would apply as in contracts for lands in fee-simple.
Moreover, it was apparently held in Anson v. Towgood, 1 Jac W. 637, and was expressly held in Vesey v. Elwood, 3 Dru. War. 74, that a purchaser of a life interest is bound to make payment notwithstanding the life is terminated by death prior to the date for consummation. These cases are cited by Vice-Chancellor Garrison in Cropper v. Brown, supra.
Again, in Mulford v. Hiers, 13 N.J. Eq. 13, it is held, in effect, that in partition, upon a sale of a widow's dower for a sum in gross, she becomes immediately vested with the right to the gross sum, which passes to her representatives on her death. Chancellor Green there says (page 16): "If the law had left to the widow her election, whether or not to consent to a sale of her dower upon receiving a sum in gross in lieu of her estate, and she had given such consent, undoubtedly the widow would have had a vested right to such equivalent upon the sale being made." By "sale being made," he means, of course, "contract of sale," not the actual consummation or conveyance. For he goes on to say, "if she had voluntarily contracted for the sale of her estate for a fixed sum, her children would have been entitled to the benefit of her contracts." In McLaughlin v. McLaughlin, 22 N.J. Eq. 505
(at p. 512), Mulford v. Hiers was approved and followed by the court of errors and appeals, although in that case the widow's death did not take place until after the actual conveyance.
The real basic question in all cases of executory contracts, is, of course, to whom shall interim gain or loss attach. If that question has not been specifically provided for in the contract, it must rest on the reasonable intendment of the parties. Where the contract is of sale, it would seem clear that the reasonable intendment of the parties, in the absence of definite expression otherwise, is that there is a transfer of equitable ownership at once. The sale has been made; it is only the details of physical transfer which remain to be *Page 177 
carried out. If the gain or loss in the interim be merely small, this more clearly appears. On a sale of a corporate bond of $1,000 market value on the day of sale, it would not occur to either party that an increase or a decrease of a dollar or two in value, prior to the delivery date, would be ground for rescinding the sale. The principle is, of course, the same whether the change in value be small or large. Again, the purchaser of the seashore lot who sought to avoid the contract because the sea had swept half of it away, would have been just as strenuous in claiming performance if the action of the sea had doubled the size of the lot. But the principle must, of course, be the same whether the change in value be increase or decrease.
It is true that there does exist a technical distinction between a loss which is a decrease in market value without destruction of the whole or a part of the physical structure of the thing sold, and a loss which results from such a destruction. But that distinction is purely technical. The loss is the thing of moment, not the means by which it occurs. Suppose a man makes two contracts of purchase and sale on the same day, one as vendee of shares of corporate stock with a then market value of $10,000, and the other as vendor of a race horse worth $10,000, both contracts to be consummated two weeks thereafter. In the meantime the corporation becomes practically insolvent, and the stock is worth only $10, and the horse is accidentally killed by lightning. Is he to stand both losses? Would such a result commend itself to any mind from the standpoint of reason and justice, on the basis of the technicality that in the one case the thing sold had not been physically destroyed and in the other case it had?
It seems to me that the applying parties may well be entitled to specific performance in the present case; certainly they are entitled to the granting of their application to be made parties, and to have leave to file supplemental answer and counter-claim. The administrator is interested in regard to the money part of the consideration, and the heirs-at-law in regard to the homestead property to be conveyed. *Page 178