ARTHUR H. STILES et al.

*v.*

MARY S. GALBREATH et al.

[Decided March 15th, 1905.]

1. The debt contracted and owing for labor done or material furnished for the erection and construction of any building, &c., becomes a lien, by virtue of the first section of the Mechanics' Lien act (*P. L. 1898 p. 538*), as soon as it becomes a debt.

2. All liens arising under that act are concurrent. The holders of such liens are entitled to share ratably in the values of the building and land upon which their debts have become liens. This equity continues whether those values are realized by a sale under the Mechanics' Lien act or under any other proceeding which divests the mechanics' liens from the building and lands and relegates the holders thereof to the proceeds of the sale for their remedy.

3. Section 58 of the Chancery act of 1902, which provides that in any foreclosure suit persons claiming liens on the mortgaged premises which could be, but which are not, recorded at the time the bill to foreclose is filed, shall be bound by the foreclosure suit, &c., is a statute of convenience of procedure only. It binds the holder of the non-recorded lien *"so far as the (mortgaged) property is concerned,"* but does not determine his rights in the purchase-money. As the owner of the unrecorded lien is not a party to the foreclosure, has no notice of it and no hearing as to his rights, it would not be "due course of law" if it were held that the foreclosure absolutely destroyed his lien.

4. When two or more creditors have concurrent liens upon a fund which stands to pay all their claims ratably, no one of those creditors can, by any procedure, equitably take the whole fund and apply it exclusively to the satisfaction of his own debt.

5. Any creditor who so appropriates a fund or property charged to pay concurrent liens must account therefor to his fellow-lien claimants according to their ratable shares.

---

On bill for surplus money, answers and proofs.

The original bill of complaint in this cause is filed by Arthur Stiles and John McClay, partners, trading as Stiles & McClay. It seeks a decree that certain surplus money under the control of this court in a foreclosure suit, wherein Stiles & McClay were complainants and Mary S. Galbreath and others were defendants, may be decreed to be paid to the complainants, Stiles & McClay.

The original bill filed in this cause made defendants Mary S. Galbreath, the owner of the equity of redemption, and others her creditors, who claimed interests or rights in the surplus money.

The bill alleges that in the preceding foreclosure suit in this court there was a sale made, and the surplus money, amounting to $6,749.49, proceeding therefrom was deposited with the clerk of this court; that after the filing of the said bill to foreclose, and before the sale of the mortgaged premises, the complainants acquired a lien against the lands secondly described in the foreclosure bill of complaint, and the buildings thereon erected,

under the Mechanics' Lien law of this state, which lien was carried to judgment in the Atlantic county circuit court.

The complainants claim and insist that the said surplus money, while apparently belonging to Mary S. Galbreath, holder of the equity of redemption, is properly and lawfully applicable to the satisfaction of their aforementioned mechanics' lien judgment obtained by them.

The complainants further show that the defendant Albertson & Young Company, a corporation of this state, also filed a lien claim on January 27th, 1902, against said land secondly described in said mortgage for the sum of $931.14; that the defendant Charles A. Devlan also filed a lien claim on February 3d, 1902, against said secondly-described lands and buildings for the sum of $3,040; that the defendant David H. Watts, trading as Sharpless & Watts, also filed a lien claim on February 28th, 1902, against said secondly-described lands, for the sum of $2,252.15; that the defendant Morse Williams Company, a corporation of this state, on or about March 11th, 1902, also filed a lien claim against said secondly-described lot of land, and buildings thereon erected, for the sum of $3,620; that the Thackara Manufacturing Company, a corporation of this state, on the 19th of April, 1902, filed a mechanics' lien claim against said secondly-described lot and buildings for the sum of $1,328; that Frederick D. Pettet filed a lien claim against said secondly-described lot and buildings on May 10th, 1902, for the sum of $572.65; that David H. Watts, trading as Sharpless & Watts, on May 12th, 1902, filed another mechanics' lien claim on said land upon said secondly-described lot and buildings for the sum of $864.

The complainants allege that the lien claims of the said several defendants set forth in the bill of complaint have been reduced to judgment or are now in process of suit.

The complainants insist that the complainants and such of said lien claimants as have established their claims to the satisfaction of this court are entitled to be fully paid out of the surplus, if there should be sufficient therefor, and if not sufficient to satisfy them in full, then to be paid *pro rata* amounts in satisfaction of said claims.

The complainants pray that the surplus money be declared subject to and applicable to the said claim of the complainants, and that the complainants and such other claims as may be adjudged to be valid liens against said mortgaged premises may be decreed to be paid out of said surplus money and for further relief.

A decree *pro confesso* was taken against the defendant mortgagor, Mary S. Galbreath, the holder of the equity of redemption.

Answers were filed by the other defendants. None of these answers raised any disputed questions except that of the defendant, Morse Williams Company.

The answer of the last-named defendant, Morse Williams Company, avers that that defendant was not a party to the foreclosure bill above mentioned, which was filed on December 13th, 1901; and further alleges that said defendant had filed a mechanics' lien claim against the premises in question on December 6th, 1901, for a balance due of $7,644.56, and that judgment was entered thereon in Atlantic county circuit court on April 17th, 1902, for $7,681.64.

The answer of Morse Williams Company also contains clauses setting up new matter as a defence, as follows:

"And this defendant, further answering said bill, says that it is informed and believes that said mortgage so foreclosed by complainant and said lien claim arose as follows:

"The said complainants had a contract with the said Mary S. Galbreath to erect a building on the land described in said lien claim which was one of the tracts described in said mortgage, for the price of forty-two thousand three hundred and eighty-one dollars; that after the commencement of the building they required the said Mary S. Galbreath to give them a mortgage on said lands as collateral security for the payment of the amount to become due them under said contract:

"That in pursuance of that agreement the said Mary S. Galbreath executed the mortgage so foreclosed, conditioned for the payment of thirty-five thousand dollars within three months from the date of said mortgage, which was dated July first, nineteen hundred and one, acknowledged July twelfth, nineteen hundred and one, and recorded July nineteenth, nineteen hundred and one:

"That the building so contracted to be erected was commenced about the fifth day of February, nineteen hundred and one:

"That the said complainants knew that this defendant was under a contract with the said Mary S. Galbreath to erect an electric passenger

15

elevator in said building, and that other defendants to the bill in this case were furnishing labor and materials in the erecting and completion of said building, and that the building and the lands whereon the same was erected were, by virtue of an act of the legislature of the State of New Jersey, entitled 'An act to secure to mechanics and others payment for their labor and materials in erecting any building (Revision of one thousand eight hundred and ninety-eight), approved June fourteenth, eighteen hundred and ninety-eight,' liable for the payment of the debt due this defendant, and the debts due other persons; and that said debt due this defendant was a lien on said building and the lot or curtilage whereon the same was erected; and that this defendant completed its work on the fourteenth day of November, nineteen hundred and one.

"And this defendant further says that although the said complainant knew of the several liens of this defendant and others upon the said building and lands by virtue of said statute, yet, when the said complainants filed their bill, on December thirteenth, nineteen hundred and one, they did not make parties defendant to said bill any of the persons having liens against the said building and lands; that the complainants were the purchasers of said land upon which said debts were liens at said foreclosure sale; that the said complainants took said mortgage solely as a security collateral to their lien claims given to them on said building by virtue of said act above recited, and not in payment for any labor performed or materials furnished in the construction of said building; that they did not advance any money upon said mortgage; that afterwards, claiming that they had, in addition to the contract price, furnished extra work to the amount of four hundred and eighty-four dollars and fifty-six cents, that there was due them forty-two thousand eight hundred and sixty-four dollars and sixty-four cents from said Mary S. Galbreath; they credited said second mortgage for thirty-five thousand dollars, and refrigerators not put in two hundred and twenty dollars, and filed a lien claim for the balance, seven thousand six hundred and forty-four dollars and fifty-six cents, which is the lien claim mentioned and described in the said bill of complaint, upon which judgment by default was entered on the seventeenth of April, nineteen hundred and two, as above recited.

"This defendant, further answering, says that in accordance with the act above recited, and for the purpose of perfecting its lien on said building and lands, on the eleventh day of March, nineteen hundred and two, it filed its claim against Mary S. Galbreath, builder and owner, said complainant mortgagee and others, in the office of the clerk of the county of Atlantic, issued a summons on said lien claim and proceeded so far therein that a judgment by default was entered on the second day of June, nineteen hundred and two, against the said Mary S. Galbreath, builder and owner, pleas having been filed by said complainants and by the Guarantee Trust Company, assignee of their said mortgage.

"And this defendant avers that the complainants and the said several persons, including this defendant, parties to said bill of complaint, had, by virtue of the act above recited, liens on said buildings and land which would be enforced by a conveyance to the purchaser in proceedings on said lien claims of the estate which the owner had in the buildings and lands at the commencement of the building, subject only to all mortgages

and other encumbrances created and recorded or registered prior to the commencement of the building and subject to the lien of mortgages given and recorded under the circumstances contemplated by and in conformity with the provisions of sections 14 and 15 of the act. That the said mortgage so made by the said Mary S. Galbreath to the said complainants was not a mortgage given and recorded under the circumstances contemplated by and in conformity with the provisions of sections 14 and 15 of said act, in that it was not a mortgage for the purchase price, nor was it a mortgage given to secure advances, but was only a mortgage given as collateral with said lien that said complainants had by virtue of said act on the said building and lands, and was in effect of no validity as against the claim of this defendant."

The complainants gave notice to strike out the above-quoted clauses (in answer of Morse Williams Company), claiming that the matter so set up as a defence was impertinent, and also to strike out the following matter or allegations set up in said answer by way of cross-bill, the same being entirely separate and distinct from the matter set up in the bill of complaint, and being impertinent thereto, viz. :

"And this defendant, by way of a cross-claim against said complainants, says :

"That the mortgage foreclosed by said complainants mentioned in their bill of complaint was given as a collateral security to the lien of said complainants under the act above recited on the lien claim, and covered other lands.

"That no money was at any time actually advanced and paid by said complainant under the terms of said mortgage.

"That complainants, knowing of said liens, not making the holders parties to said foreclosure bill, and being the purchasers of the building and land upon which said liens are, cannot have any greater right or estate than they had under said mortgage at the time it was created.

"That this defendant is entitled to participate in the proceeds of the sale of the lands described in its lien claim with said complainants.

"That the property described in said mortgage not covered by said lien claims realized at the foreclosure sale five thousand three hundred dollars.

"That said amount should be appropriated, first, to the payment of the expenses of the foreclosure proceedings, amounting to four hundred and twenty-six dollars and forty-one cents, and the balance, four thousand eight hundred and seventy-three dollars and sixty cents, applied to the lien of said complainants on the building and lands described in said lien claim of this defendant for the whole amount of complainants' contract price and extra work.

"That the proceeds of the sale of the lands described in the lien claim of this defendant should be applied *pro rata* to the several lien claims against said buildings and land.

"That said complainants, coming into a court of equity must do equity, and equity in this cause requires that the proceeds of the sale of the lands covered by the liens should be apportioned pro rata among the several claimants.

"This defendant therefore prays that a decree may be made against said complainants that said mortgage so foreclosed by them, so far as the lands described in this defendant's lien claim is concerned, was not a lien on said lands prior to the lien of this defendant, and that the said complainants account for the money received from said foreclosure sale by them, and be decreed to pay to this defendant its proportionate share thereof."

The complainants' motion was overruled.

The complainants thereupon amended their bill of complaint by consent of parties (except the defendant Galbreath), stating the fact that they entered into a contract in writing with the defendant Galbreath for the erection and construction of the building at the southwest corner of Pacific and New York avenues in Atlantic City (the premises against which the lien claims were filed) ; that pursuant to the Mechanics' Lien act they caused a copy of the contract and of the specifications accompanying the same to be filed in the office of the clerk of Atlantic county:

The complainants further amended the prayer of their bill by striking out the portion which asked that the claims of other persons than the complainants might be determined to be valid liens against the premises, leaving the bill of complaint to pray only that the complainants' claim might be decreed to be paid out of the surplus money.

To the amended bill of complaint all of the defendants (except the owner of the equity of redemption, Mary S. Galbreath), have filed answers.

That of Morse Williams Company contains the same averments as are above quoted from the company's answer to the original bill, and in addition thereto admits that the complainants had a written contract with Mary S. Galbreath for the erection of the building mentioned in the bill of complaint, but denies that the complainants' contract was for the whole completed building, and avers that the elevator furnished by the Morse Williams Company was a part of said building, neces-

sary to complete it without which it could not be used as designed and intended.

As part of its cross-bill the Morse Williams Company further avers that it furnished labor and materials in and about the erection and construction of said building; that the said building and lands are liable for the payment of the debt owing the Morse Williams Company for the same, and that the defendant is entitled to participate in the proceeds of the sale of said lands, &c., with the same prayer above quoted, asking that the complainants may account for the moneys received by them from the foreclosure sale of the premises liened upon, and receive only the proportion of the whole purchase-money which might be due said complainants as lien claimants and not as mortgagees, and that the said defendant may also have its proportionate share thereof, &c.

The answers and cross-bills of all the other defendants (except Mary S. Galbreath, who files none), present in substance the same claims and defences.

The complainants join issue upon the defendants' answers. They answer their cross-bills. All of the replications are substantially to the same effect. The complainants deny that their mortgage was given them as collateral security to their lien. They admit the mortgage covered other land than the premises liened upon. They deny that no money was by them advanced under the terms of the mortgage, and aver that the full consideration named in the mortgage was actually advanced and paid to the mortgagor. They deny all knowledge of the existence of any of the defendants' liens on the buildings and lands described in the mortgage at the time the foreclosure suit was instituted. They deny that the defendants performed labor or furnished material in the erection of the building, deny that the building and lands are liable for the defendants' claims and also deny that the defendants are entitled to participate with the complainants in the proceeds of the sale of the lands described in their lien claim. They admit that the property described in the mortgage not covered by the lien claims realized at the foreclosure sale $5,300. They deny that any part of that sum should be applied to the lien of the complainants for the whole amount

of the complainants' contract price and extra work. They deny that the proceeds of the sale of the lands described in the lien claims and derived from the foreclosure of the complainants' mortgage, should be applied *pro rata* to the several lien claims against the building and lands.

The cause was argued on these pleadings. While it was under consideration the vice-chancellor (in order to avoid a decision which might be controlled by the omission to bring the holder of the equity of redemption in as a party defendant to the amended bill of complaint) called the attention of the parties to the fact that although a decree *pro confesso* had been taken against Mary S. Galbreath (holder of the equity of redemption) on the original bill of complaint, no appearance had been entered for her to the amended bill of complaint, nor was she in any way brought into court as a defendant to that bill, which asks for a different decree from that sought by the original bill of complaint.

Upon this an appointment of solicitor by the defendant Mary S. Galbreath with a consented decree *pro confesso* against her, under the amended bill, was filed in the cause, and the matter is now considered with the proceedings thus changed.

*Mr. Eli H. Chandler,* for the complainants.

*Mr. Thomas E. French,* for the defendant The Morse Williams Company.

*Mr. Robert H. Ingersoll,* for the defendant F. S. Pettet.

*Mr. William I. Garrison,* for the defendant Charles A. Devlan.

*Mr. Allen H. Gangewer,* for the defendant Sharpless & Watts.

*Mr. Harry Wootton,* for the defendant Thackara Company.

*Mr. Charles C. Babcock,* for the defendant Mary S. Galbreath.

GREY, V. C.

As the bill was originally filed, the complainant in this case sought to have the surplus money arising under the foreclosure sale decreed to be subject to and applicable for the payment of the lien claims, not only of the complainants, but also of such other lien claims as might be adjudged to be valid liens against the mortgaged premises, without disputing the validity of the defendants' lien claims, or seeking for the complainants any preferential consideration in the application of the surplus money. The original bill dealt with the surplus in the foreclosure suit as if it were the proceeds of a sale under mechanics' lien, and it asked a *pro rata* distribution among all the lien claimants such as is contemplated by section 29 of the Mechanics' Lien act. *P. L. 1898 p. 550.*

When the answer of the defendants, Morse Williams Company, came in, with a cross-bill appended, praying that the complainants, Stiles & McClay, might account for the moneys they received from their foreclosure sale, the complainants changed their position by amending their bill of complaint as above recited.

By their amendment to their bill the complainants set up their filed contract for the construction of the building, and assert for themselves the position and preference of such a contractor under the Mechanics' Lien act. *P. L. 1898 p. 538 § 2.* They further insist by their amendment that none of the lien-claimant defendants in this cause are entitled to participate or share in the proceeds of the foreclosure sale, the complainants contending that they only should be decreed to be paid the amount claimed by them to be due on their lien claim.

The fund which the complainants, Stiles & McClay, seek to affect by this suit is the surplus money remaining after satisfying a decree made in this court in a foreclosure suit wherein they (Stiles & McClay) were complainants, and Mary S. Galbreath, the mortgagor, and other parties, who were mortgagees, were made defendants. None of the lien claimants who are parties defendant to the suit at bar were made defendants in that foreclosure suit, for the reason that on December 13th, 1901, when the complainants, Stiles & McClay, filed their bill to foreclose

their mortgage none of the defendants had yet filed their lien claims.

Section 78 of the Chancery act (*1 Gen. Stat. p. 387*) provides that in any foreclosure suit, persons claiming liens upon the mortgaged premises, which by any provision of law could be recorded, but which are not recorded when the bill to foreclose· was filed, shall be bound by the proceedings in the foreclosure suit, &c.

The complainants contend that the operation of section 78 (now section 58 of the Chancery act of 1902) is not only to cut off the unfiled liens as charges on the mortgaged lands, but also absolutely to destroy their claims, so that they cannot be asserted against the surplus purchase-money arising from the foreclosure sale.  Under this construction of that statute the complainants insist that they alone are entitled to the whole of the surplus money of the foreclosure sale and the defendant lien claimants to none of it.

The terms of that statute apply to the situation existent when the bill to foreclose was filed.  Materialmen, who, by the statute, then had inchoate liens for material furnished to the building which they had not advanced to the stage of filed claims, are, under the terms of that statute, so bound by the foreclosure decree that they cannot make any further claim against the mortgaged property.

But the claims of the defendants in the present suit are not asserted against the mortgaged premises.  The act, by both its terms and its intention, served only to relieve the mortgaged premises from the operation of unrecorded or unfiled liens.  It does not deprive the lien claimants of their equitable rights in the proceeds of the sale.

This construction is entirely equitable for the reason that the lien claimants are not parties to the foreclosure suit.  For· the convenience of the mortgagee the mortgaged premises are by the statute discharged from their liens, but they have never, as between them and the mortgagee, had their day in court.  Whatever disputes might exist or arise between the mortgagee and the lien claimants touching their respective rights, they have never been presented or passed upon by any tribunal.  To construe

section 78 (now section 58 of the Chancery act of 1902) to mean not only the discharge of the mortgaged land from liens existing but unrecorded when the foreclosure suit is begun, but also as finally destroying the claims of all such lienholders without notice and without a hearing, would, in my view, be to deprive them of their property in their liens without "due process of law."

The words of the statute also indicate that it is not intended to destroy the equities of the holders of unrecorded lien claims, for it binds them only "so far as the property is concerned," and while it enables the lien claimants to apply to be admitted as defendants in the foreclosure, it nowhere declares that if they do not so apply their rights in the surplus money shall be forfeited.

This effect of the statute is recognized by our courts. In *Raymond* v. *Post, 25 N. J. Eq. (10 C. E. Gr.) 452*, the statute is discussed, and its purpose is plainly indicated to be to enable a proceeding relating to real property to be prosecuted to judgment in a manner to bind, "so far as the property is concerned" (*p. 452*), all persons whose liens are existent when the bill of complaint is filed, but which are not then registered or recorded.

The statute is one of convenience only, and does not determine ultimate rights. It relieves the complainants from any obligation to make parties of persons holding liens against the mortgaged property not of record, and binds those parties from thereafter asserting claims against that property, but it does not destroy their equitable interest in the proceeds of the sale, nor deprive them of the right thereafter to present them to any competent court for determination.

The defendants, some of them, insist that as the complainants, Stiles & McClay, knew when they filed their bill to foreclose, of the defendants' outstanding but unfiled lien claims, they were bound to have made those lien claimants parties to the foreclosure suit.

I think the terms of the statute apply to make the foreclosure decree binding "so far as the property is concerned," irrespective of the knowledge of the complainants of the existence of the outstanding lien claims, and that all the defendants are bound by the foreclosure suit, but only to the extent indicated by the

construction given in *Raymond* v. *Post,* only "so far as the property is concerned."

No other construction can be given to that statute. The foreclosure suit cannot be held to have adjudicated adversely to the lien claimants their present contention against Stiles & McClay, for in that foreclosure suit no pleading even suggests that there were any lien claims against any part of the mortgaged premises, or that there could be any such charges on it. The complainants in that foreclosure suit did not make the lien claimants defendants to it, nor bring them into court in any way, nor ask any relief against them, nor does the decree in that suit pass on their equities. It is therefore impossible to ascribe to that decree the effect of *res adjudicata.* The utmost operation that can be given to the statute is to hold that the foreclosure sale removed the unrecorded charges as liens on the land "so far as the property was concerned," and left them to assert their rights against the proceeds of the sale.

The surplus money affected by this suit arises from the foreclosure sale. The proceedings in that cause are here produced in evidence. They show that the mortgage foreclosed by the complainants, Stiles & McClay, covered two lots of land in Atlantic City, one situate on Pennsylvania avenue, which was sold for $5,300 to Caleb James Coatsworth; the other, located at the southwest corner of New York and Pacific avenues (which was sold for $39,000 to Stiles & McClay, complainants in the foreclosure suit), on which stands the Galbreath building.

The first point to be considered, it seems to me, is from which lot did the surplus money here in dispute arise? The admitted facts show that of the two lots included in the mortgage foreclosed the lot situate at the southwest corner of New York and Pacific avenues was the one against which the lien claims were filed, and that the building known as the "Galbreath Apartment House," thereon erected, was the building, the major part of which was constructed by Stiles & McClay, under their filed contract with Mrs. Galbreath, the owner, and was that building in which were constructed the elevators, plumbing, electric lights and gas fixtures, wall decorations, &c., which are the subject-matter of the other lien claims.

The defendants in this suit, lien claimants, had no interest in the other lot mortgaged, which fronted on Pennsylvania avenue.

The complainants, Stiles & McClay, holders of the mortgage foreclosed, were therefore in the position of a creditor who has a lien upon two funds of the debtor, upon one only of which other creditors of the same debtor have liens. The rule in such a case is that the assets should be marshaled, and the creditor who has a lien upon two funds shall be primarily related in the making of his money to that fund in which the other creditors have no lien, provided that course is not injurious to any other party whose equity is superior to the claimants upon the single fund. *Reilly* v. *Mayer, 12 N. J. Eq. (1 Beas.) 55; Mechanics' Building and Loan Association* v. *Conover, 14 N. J. Eq. (1 Mc-Cart.) 225.*

The surplus in this case must therefore be held to have arisen wholly from the proceeds of the sale of that lot in the mortgage, which was situate at the corner of New York and Pacific avenues, against which the lien claims were filed.

The next question raised is, the complainants claim that they are entitled to the whole surplus money because they are the only lien creditors of Mrs. Galbreath, whose claim has been established by final judgment, on which execution might issue.

This claim is untrue in point of fact. All of the defendant lien claimants have filed their lien claims, and all except two have entered final judgments thereon. One of them, the Albertson & Young Company, entered their judgment more than a month before the complainants entered theirs.

It is not necessary, however, that a final judgment be entered on a mechanics' lien claim in order to make a debt a lien upon the building and lands, &c. The very first section of that act (*P. L. 1898 p. 538*) declares that the debt contracted and owing to any person for labor performed or materials furnished for the erection and construction of any building "shall be a lien on such building and on the land whereon it stands."

Every debt having the statutory characteristics becomes a lien instantly that it becomes a debt by the express words of the act. The filing of the claim, the suit and judgment thereon, are proceedings to apply the property upon which the debt has already

become a lien to the payment of that debt and of others which have like statutory characteristics. If, pending these proceedings and before final judgment, there be, by foreclosure of a previous mortgage or the like, a sale of the property upon which these debts have become a lien, the lienholders will thereby be relegated to the purchase-money for their remedy, and will have to show their right upon any application for it. The procedure upon such antecedent charge, having already converted the property liened upon into money, I can see no reason for thereafter prosecuting the lien claims to judgment in the law court if they are not disputed as between the lien claimant and the contractor or owner. The equities of all the parties as claimants upon the fund can be heard and adjusted upon the application for the purchase-money.

Nothing appears or is shown which indicates that the defendants' claims are disputed as valid lien claims as between any other persons than the several lien claimants themselves and the complainants, Stiles & McClay. All the elements of those disputes have been litigated, presented in evidence and in argument in this suit. When the questions here mooted are here determined, nothing will remain which affects the rights of the parties. The prosecution of the lien suits to final judgment in the law court would therefore result simply in useless delay and expense.

This court will entertain them as statutory liens, the holders whereof claim to be entitled to share in the surplus money, and will pass upon and adjudicate their rights in disposing of that fund.

The complainants, Stiles & McClay, also contend that the surplus fund did not arise from any sale under the Mechanics' Lien law, and they insist that it is only when proceeds of a sale are so raised that the liens are concurrent (citing section 29 of the Mechanics' Lien act).

This argument is another contention which would make the words of a statute defeat its purpose and effect. The first section of the act prescribes the circumstances under which the debt shall become a lien. The intent and object, as expressed in all its sections, show that all holders of such debts shall share

ratably in the values charged with the statutory liens. If the fund, proceeds of land, &c., subject to liens, comes before this court for ascertainment of the rights of claimants and distribution, this court will recognize the nature of the lien as given by the statute and administer the fund accordingly.

Nothing in the statute declares that the concurrency of the lien claims and the ratable distribution of the proceeds shall occur only when there is a sale of the building and lands, &c., by proceedings under the lien law, and that in all other cases of sale of those lands the liens shall not be concurrent, and the distribution of proceeds shall not be ratably among the lien claims.

It remains to inquire whether the defendants had, as lien claimants, the statutory lien given by the Mechanics' Lien law against the building and lands, &c., from which their liens are now discharged, the sale of which has produced the purchase-money in dispute. The complainants insist that they are entitled to the whole surplus money under their lien judgment because of their filed contract for the construction of the Galbreath building on the mortgaged land. The proof shows, substantially without dispute, that neither the contract of Stiles & McClay nor the specifications thereunder included those articles of the equipment and finishing of the building which were supplied by the lien claimants who are defendants in this suit.

Mr. Adams, the architect, who drew up the complainants' specifications, plans and agreements, and superintended or inspected the construction of the building, expressly declares (and he is not contradicted) that there were other contracts for parts of the building not provided for in the specifications of Stiles & McClay. He specifically mentions a hot-water heating plant furnished by the defendant Devlan; the elevator by Morse Williams Company; electric lights and electric bells by the Albertson & Young Company; tile work and mantels by Sharpless & Watts; wall paper was also not included in the Stiles & McClay contract, and this was furnished by the defendant Pettet. There is no dispute whatever in the testimony that the work done and materials furnished by the defendants above named were not included within the work agreed to be done or mate-

rials agreed to be furnished by the complainants, Stiles & Mc-Clay, in their contract and specifications.

The declaration in the second section of the Mechanics' Lien act (*P. L. 1898 p. 538*), making the building and lands liable to lien by the contractor alone, when he has filed his written contract, is limited to liens which are for work done or materials furnished in pursuance of such filed contract. Stiles & McClay, the complainants, had the exclusive right (having filed their contract) to maintain and enforce their lien on all work done and materials furnished pursuant to that contract. Every other person having a debt contracted and owing to him for labor performed or materials furnished outside of the matter included within the contract of Stiles & McClay is also entitled to file his lien under the terms of section 1 of the statute. The debts arising because of all these separate and independent contributions to the erection of the building become concurrent liens against the whole structure, entitled to the benefits secured to them under the Mechanics' Lien act, and to the equities which attend upon the enforcement of any mode of sale of the premises charged with those liens. The equities of the parties remain the same, whether the property liened upon be sold by the enforcement of the lien claims in the mode prescribed by the statute, or by the foreclosure of a mortgage, as in the present case, which may discharge the liens so far as the property is concerned, and relegate them for their remedy to the purchase-money arising from such a sale.

The issues joined between the complainants on their bill as amended and the answers of the defendant lien claimants thereto must be determined against the complainants' contention that they alone are entitled to all of the surplus money. The liens of the complainants and also of the defendants, lien claimants, are concurrent charges upon the surplus money entitled to be paid *pro rata.*

The remaining question arises upon the cross-bills filed by the defendants against the complainants, Stiles & McClay. By their cross-bills the defendants insist that the mortgage given by Mrs. Galbreath to Stiles & McClay upon the building under construction, and the lot whereon it stands, was in truth given as

collateral to secure the mechanics' lien debt which Stiles & McClay had acquired against that property for work done and materials furnished under their building contract. They allege that no money was advanced or paid at any time by Stiles & McClay on. that mortgage; that under the Mechanics' Lien statute (*P. L. 1898 p. 550* § *29*) all such claims are concurrent liens upon the building and upon the land whereon the same is erected; that so far as the complainants' mortgage was charged upon the building and lands which was subject to the concurrent liens of all the lien claimants, and has raised money for the complainants from the sale of the property in which all were entitled to share, the complainants must account to and with the other lien claimants for those proceeds, and pay them their ratable shares given them by the Mechanics' Lien, act.

The complainants, in answer to these cross-bills, deny that their mortgage was taken to secure, as collateral security, their lien claims; they deny that no money was advanced by them, and explicitly aver that the full consideration-money named in the mortgage was actually advanced and paid to the mortgagor; they deny all knowledge of the existence of the defendants' liens at the time the foreclosure suit was instituted; they deny that the defendants performed labor or furnished materials in the erection of the building; deny that the building and lands are liable for the defendants' claims, and also deny that the proceeds of the sale of land derived from the foreclosure of complainants' mortgage should be applied *pro rata* to the satisfaction of the several lien claims against the building and lands.

The testimony submitted at the hearing of this cause shows, without contradiction, that no money whatever was advanced or paid at any time by Stiles & McClay upon the mortgage which was given to them by Mrs. Galbreath, which they subsequently foreclosed.

The evidence discloses the transaction to have arisen and to have taken place as follows: Mrs. Galbreath was not able to make the payments on the Stiles & McClay contract at the time when, according to the contract, they came to be due. Mr. McClay obtained the mortgage from her as collateral to secure

the payment of the price for the labor or material furnished by them under their filed contract.

Notwithstanding the complainants, in their answers to the defendants' cross-bills, assert that the full consideration named in their mortgage was actually advanced and paid to the mortgagor, they offered no testimony in denial or explanation of the evidence of Mrs. Galbreath and her architect, Mr. Adams, showing the mortgage to have been given as a collateral security, nor did they even cross-examine those witnesses on that point.

Section 15 of the Mechanics' Lien act applies to the taking of such mortgages, and declares that they shall have priority over the lien claims to the extent of the money actually advanced and paid by the mortgagee and applied to the erection of the building, provided the mortgage be recorded before the filing of such claim.

The mortgage taken by Stiles & McClay from Mrs. Galbreath and foreclosed by them was, it is true, recorded before the filing of the defendants' lien claim, but the uncontradicted proofs show that no money whatever was either advanced or paid by them on account of the mortgage, and that no such money was applied to the erection of Mrs. Galbreath's building. That mortgage was in truth given as a collateral to secure to Stiles & McClay the debt owing to them under their contract to build the Galbreath apartment house. On this building, and the land whereon it is erected, they were entitled to have a mechanics' lien which should be concurrent with those filed by the defendant lien claimants, all sharing ratably in the values which might proceed from the application of the building and lands to the payment of all the debts incurred for work and material supplied to the building.

By taking their mortgage on the Galbreath house to secure solely their own debt, Stiles & McClay sought to withdraw that property from its liability to be applied to pay ratably all the concurrent liens held by themselves and other lienholders, and to appropriate it exclusively to pay their own lien.

When two or more creditors have concurrent liens upon a fund which stands to pay all of their claims ratably, no one of those creditors can, by any procedure, equitably take the whole fund

and apply it solely to the satisfaction of his own claim. In such a case the common fund which the one creditor has taken, or its value, must be accounted for to those who are ratably with him entitled to have it applied to the payment of their debts. Section 15 of the Mechanics' Lien act is intended to cut off just such preferential applications of the lienable property to the payment of one lien and the exclusion of others. The only mortgage preference permitted is to the extent that money is actually advanced and paid by the mortgagee and applied to the erection of the new building, &c. (*P. L. 1898 p. 543 § 15,* and *p. 550 § 28; Young v. Haight, 69 N. J. Law (40 Vr.) 455.* .

In the present case the complainants have prosecuted their wrongfully taken mortgage to a foreclosure sale, have bought in the building and lands under it, have credited the amount of the purchase-money on account of the contract price due them for their work and material in erecting the building, and now ask that the whole of the surplus money be given exclusively to them to satisfy the residue of their contract price.

The mortgage taken by Stiles & McClay was good as between the mortgagor, Mrs. Galbreath, and the complainants, Stiles & McClay, as a security for the payment of the debt, the contract price which Mrs. Galbreath, the mortgagor, owed them for building the Galbreath apartment house.

The complainants have themselves bought in the Galbreath apartment house at their own foreclosure sale, and have held title thereto during this litigation. Their ownership may in the meanwhile have become charged with their debts, or by some disposition of the title. It will be much more to the advantage of all the parties interested that the complainants shall be directed to account for the foreclosure purchase-money arising from the sale of the Galbreath apartment house than that their mortgage should be declared subject to the defendants' liens and the building and lands be directed to be sold again under the foreclosure lien judgments.

The cross-bills claim that the defendants are entitled to participate with the complainants not only in the surplus moneys, but also in the proceeds of the sale, and pray that the complain-

ants may account for the moneys received by them from said foreclosure sale of the Galbreath apartment house, &c., and be decreed to pay to the defendants their proportionate share thereof.

The complainants by invoking the aid of this court to administer equitable relief have put themselves in a position to be required to do what is equitable to the defendants regarding the transaction under consideration.

This will oblige the complainants to account for the whole proceeds of the foreclosure sale of the building and lands which were liable to the concurrent liens of the complainants and the defendants under the Mechanics Lien law, which the complainants have diverted from their proper application.

The result is that the proceeds of the foreclosure sale of that lot which was not subject to the defendants' liens should be first applied to the payment of the debt which Mrs. Galbreath owed Stiles & McClay; that the residue arising from the sale of the Galbreath apartment house, &c., against which the complainants and defendants had their concurrent mechanics' liens, and all of the purchase-money received by or credited to the complainants from the proceeds of the foreclosure of the mortgage on the latter-named property, should be applied to pay and satisfy those liens ratably, according to the equity of the Mechanics' Lien statute.

A decree will be advised in accordance with the views above expressed. If the parties can agree upon a decree definitely fixing the amounts to be accounted for and the ratable proportions of their distribution, I will advise it. If not, the matter may be referred to a master for ascertainment, statement of account and report.