May 8th, 1924, complainants filed bill to foreclose a mortgage of $80,000 given by defendant Goldstein (then the owner of the mortgaged premises) to Weinberger (who later assigned a part interest to his co-complainant), dated July 19th, 1923, bringing in as defendant Samuel Slaff, holding a $35,000 mortgage (one month prior in date but subordinated to complainants' mortgagee); Shelkowitz, a subsequent lessee; Superior Finance Company, holder of a subsequent $16,000 mortgage; Spindel, holder of a subsequent $5,000 mortgage; Samuel Slaff and Samuel Eichenbaum, as subsequent grantees under deed from Goldstein alleged to be only by way of security, and Goldstein and wife, as the alleged real owners of the equity of redemption; also Paterson Glass Company and Samuel Zaentz, mechanics' lien claimants.
After decree pro confesso and reference, a master's hearing was held October 15th, 1924, and report was filed October *Page 3 
20th, 1924, that there was due to complainants $73,196.30; to Slaff, $37,776.67; to Superior Finance Company, $16,720; to Spindel, $5,276.67; to Zaentz, $276.67.
Nothing further has since been done in this cause except the filing of petitions of the parties applying to come in as defendants, and the interim proceedings on such petitions; this was because this Weinberger suit was, from a practical, if not technical, standpoint, superseded by a foreclosure suit commenced June 20th, 1924, by Sidney Lobsenz, the holder of a mortgage of $30,000 comprising the same premises, and prior in lien to all of the encumbrances involved in the Weinberger suit. All the parties in the Weinberger suit (and one or two others) were brought in as defendants in the Lobsenz suit. Decree pro confesso was taken against all, and, on reference to a master, hearing was held September 9th, 1924, and a report filed October 3d 1924, that there was due to Lobsenz $30,825.84; to Weinberger and Hertstein, $73,677.75; to Slaff, $37,660; to Superior Finance Company, $16,666.66. On this report final decree was entered February 16th, 1925. Prior to that date the present applying lien claimants had petitioned to be made parties, and for leave to file answers and counter-claims attacking the amounts due on, and priority of, the Weinberger, Slaff and Superior Finance Company mortgages. The final decree tentatively reserved to them such rights, if any, as they might prove to have. The fieri facias
directed that payment be made to Lobsenz for his mortgage; also by consent to his wife some $20,000 for the amount due on a mortgage held by her antedating all the others, and also to Weinberger, Slaff and Superior Finance Company on their giving bond of $40,000 conditioned to pay the present applying lien claimants such moneys, if any, as might be directed by this court. The bond was given; the sale was had, and Slaff became the purchaser. The proceeds of sale were not quite sufficient to pay Slaff in full, and, of course, not the Superior Finance Company.
The application of the lien claimants is based upon the allegation that they furnished labor and materials in the erection of a building on a portion of the mortgaged premises; *Page 4 
that they commenced furnishing such labor and materials before the date of the Weinberger mortgage; that they had not completed the furnishing of such labor and materials until just prior to the filing of their lien claims; that they filed their lien claims for unpaid balances due them the last of October, 1924, and then promptly applied to be admitted as parties to this suit.
Weinberger and Hartstein and Slaff resist the application; and secondly, insist that if the claimants be admitted they must be limited as to the defenses and claims which they may set up.
A little simplification may help in the solution of the question. At the time the present application was made the situation was, essentially, this: A bill to foreclose by a first mortgagee (Weinberger) against a second mortgagee, a third mortgagee and the owner; decree pro confesso; master's report adjudicating the rights accordingly; application by lien claimants to become parties to the suit and to litigate their claim to the proceeds of sale against the first, second and third mortgagees and the owner; the claim of the lien claimants being that they furnished labor and materials for the construction of a building on lands comprised in the mortgage, under contracts made (and work commenced) prior to the giving of the first mortgage, which contracts were not completed by them until after the decreepro confesso; and that immediately upon completing their contracts they had filed lien claims under the statute for the moneys due them and promptly applied to be admitted in the cause, and that moneys for which the mortgages purport to be security were not used to pay for labor and materials in the construction of the building.
Assuming the facts as to the lien claims to be as above set forth, it seems clear that the lien claimants are entitled to be admitted as parties and given an opportunity to establish their claims, for their rights or liens would be superior to those of complainant first mortgagee and all other parties. To deny the application might result in depriving them of the superior right given them by the Mechanics' Lien act. *Page 5 
If they did not come into this suit could they enforce their lien claims against the purchaser at the foreclosure sale? If they could not, it would be obviously unjust to deny them admission, and, even if they could, it would be better for all concerned to admit them. The purchaser at forclosure sale might well know nothing of the lien claims, and bid a price which would not take them into account. The claims might be invalid, but in a subsequent suit by them against the purchaser the latter would find it difficult to procure the evidence to prove them invalid.
That these lien claimants have a right (unless forfeited or lost by them in some way) to litigate their claims to the proceeds of sale as against all parties to these suits (except Lobsenz) there can be no doubt. Stiles v. Galbreath, 69 N.J. Eq. 222; affirmed, 71 N.J. Eq. 299. The present case is even stronger than that one, for there, apparently, the lien claimants had liens which could have been, but were not, recorded at the time of the filing of the foreclosure bill, while here (primafacie) the lien claims could not have been filed until just before the present application was made. I think it is also quite apparent from that decision (see 69 N.J. Eq. 233) and section 58 of the Chancery act that these claimants would have the right to be admitted to this suit for the purpose of such litigation of their claims, even if their lien claims had been recordable at the time of the filing of the bill; so much the more must they have that right when their claims could not have been filed until after the foreclosure bill.
It is contended that, under sections 29 and 30 of the Chancery act, the claimants, if admitted, are precluded from asserting claims adverse to the complainants. Not so. Section 30 provides only that decrees already made shall not, ipso facto, be opened or set aside by the subsequent admission of a party; it does not prevent the court from opening or setting aside such decrees by special order for the benefit of the admitted party, where such a course is requisite or equitable. *Page 6 
The provision in section 29, that the admitted party shall be bound by all orders and proceedings in the cause against the party whose interest he has acquired, applies only where that interest was acquired after suit was commenced. The lien claimants acquired their interest from the owner, but they acquired that interest in inchoate form, prior to the foreclosure bill, to wit, when the owner contracted with them to do the work and furnish the materials. The filing of the lien claim was not the transfer of interest from the owner, but the perfecting of his inchoate lien. I have no hesitation in holding that section 29 does not mean that a lien claimant, admitted under such circumstances as those now being considered, must be so bound by the prior proceedings and orders as to prevent his being able to litigate his claim to rights in the proceeds of sale superior to those of the complainant. But even if I took a contrary view on this point, section 29 would be no barrier, in view of sections 3, 11 and 13 of the Chancery act of 1915, and the present chancery rules hereinafter referred to.
In Riverside Building and Loan Association v. Bishop,98 N.J. Eq. 508, it was held by Vice-Chancellor Buchanan that one who, pending foreclosure suit, recovers judgment against the mortgagor, is entitled to be admitted as a party even after final decree, in order that he may have an opportunity to have determined his interest and priority as against the other defendants. The petitioning party there claimed to have acquired priority over senior judgment creditors because he had levied and they had not. In the present instance the application simply goes one step further to admit petitioner to litigate his claim of rights superior to those of complainant. The difference is not one of principle, but is a question merely of convenience and orderly prosecution of suits. If a trustee in bankruptcy of a mortgagor, appointed after decree pro confesso (or even final decree) in a foreclosure suit, applied for admission and for leave to file counter-claim to set up that complainants' mortgage was in fraud of creditors, is there any good reason why he should not be permitted to do so? If denied admission, he would *Page 7 
assuredly have the right to file an original bill, and, undoubtedly, on his application the proceeds of sale would be impounded in the foreclosure suit pending the determination of his separate bill. So, in the present instance, the lien claimants have a right to have their claims as against the complainant Weinberger litigated in some suit, and since it may be done in this suit, conveniently and without prejudice to other parties, it should be done here.
Counsel have referred to a number of reported cases, prior to 1915, as authority for the denial of this application, which, however, are not now controlling in view of the Chancery act of 1915. By section 3 of the act it is provided that the chancellor, by rules, may regulate and determine all questions relating to the subject of parties to all suits and proceedings in chancery, and all pleadings and proceedings in such suits. Chancery rules 6, 13, paragraphs 3, 23, 24 and 28 (all of which had their origin in the Chancery act of 1915, appendix) afford ample authority for the conclusion herein reached.
It is said, however, that the petitioners have lost their right to become parties for several reasons — first, because by agreement among themselves and Slaff (the mortgagee) and Goldstein (the owner), Goldstein conveyed the property to Slaff and Eichenbaum as trustees, and the present petitioners assigned, or purported to assign, to the same trustees, December 4th, 1923, all their right, claim or interest as inchoate mechanic lien holders, in order to extinguish all such lien claims, so that the trustees might manage the property for the interests of all parties to that agreement, and mortgage or sell it to raise money to pay all the claims. The agreement, however, expressly provides, in case of breach of agreement by the trustees, the right to file lien claims should revive in the lien claimants. There are disputed questions of fact as to whether or not the trustees did breach the agreement in several instances. It does not seem that the agreement should necessarily prejudice them so far as concerns the Weinberger-Hartstein mortgage, since it appears that it was not intended to be an irrevocable extinguishment of the lien claims under *Page 8 
all circumstances. Moreover, Weinberger and Hartstein were no parties to the agreement; it was in nowise intended for their benefit; nor is there any showing of facts to raise an estoppel in favor of Weinberger and Hartstein because of the agreement. Nor should it necessarily prejudice them so far as the Slaff mortgage is concerned, for Slaff was one of the trustees, and he cannot be permitted to take a position contrary to the interests of his cestuis que trustent, which is contrary to his express agreement in the trust instrument.
It is contended that there was no breach of the agreement so as to revive the lien claims. The claimants say there were a number of such breaches. There are thus disputed questions of fact on these issues under the affidavits and depositions before the court on this motion. Those issues, however, are fairly in dispute, and it is not the function of the court to determine them on this motion. The hearing on this motion is not intended to be an actual trial of the applicants' whole case. All that the court is required to do, all that it should do, is to satisfy itself that the petitioners have a bona fide claim of, or to such an interest as entitles them to be made parties to the suit, that they are asserting bona fide a claim which they ought equitably to be permitted to have tried out. This was the law under the old practice (Conrad v. Mullison, 24 N.J. Eq. 65
(at p. 68); it is equally true under the present practice.Boehm v. Rieder, 96 N.J. Eq. 167 (at pp. 171, 172);affirmed, 98 N.J. Eq. 688.
It is further contended that, by virtue of this trust agreement, Slaff and Eichenbaum, as trustees holding the lien claims, legally represented the lien claimants in the foreclosure suit; that the latter were thereby in legal contemplation actually brought into court in the persons of Slaff and Eichenbaum, and, hence, are bound by the decree pro confesso
against Slaff and Eichenbaum.
It does not seem to me that this contention is sound, because, for one reason, on the showing made by the claimants, their right to file liens did not accrue until after the decree proconfesso. Suppose they had made no attempted assignment, and suppose they had held mortgages entirely dissociated *Page 9 
from their lien claims and had been made parties defendant as such mortgagees, could their application now, having become lienholders of record, to set up claims by virtue of such mechanics' liens, be denied on the ground that a prior decreepro confesso against them as mortgagees also barred them on lien claims which they could not then have set up because not then existent? I think not. A decree is res adjudicata it is true, not only on matters set up in the pleadings, but also on matters not set up which could have been set up, but not on matters which could not have been set up.
It is also contended that it appears from the affidavits and depositions that these lien claimants filed their lien claims fraudulently. There seems ground for grave suspicion in this behalf, but I think it is not so clear as to require denial of their application to be heard on a plenary trial.
They will be given leave to be admitted as parties defendant in both suits, and to file answers and counter-claims apt and sufficient to put in issue between them and all parties to the suits except Lobsenz, their claims to so much of the net proceeds of the sale (of that portion of the mortgaged premises to which their lien claims prima facie attached) as remained after payment of Lobsenz and his wife. The adverse parties may set up in their counter-pleadings any and all facts upon which they rely to establish as against the lien claimants' loss by the latter of rights or defenses through waiver, extinguishment, laches, estoppel or fraud of any kind.
I am inclined to think it may be advisable to consolidate the two suits. The form of order may be settled on notice. Costs will abide the result on final hearing. *Page 10