Complainant sues to foreclose mortgage. The issues are as to the priorities of the several encumbrances.
Defendant Mrs. Di Fabio holds two purchase-money mortgages on the premises aggregating $5,000, dated May 17th, 1928.
Complainant, mortgage company, holds a $7,000 mortgage made May 26th, 1928, recorded June 4th, 1928 — being a construction loan or advance money mortgage.
May 29th, 1928, Mrs. Di Fabio executed agreements with complainant, subordinating her mortgages aforesaid to the lien of complainant's said mortgage; these were recorded June 5th, 1928.
Brodhead Murphy Company has a judgment on mechanics' lien claim for $162.28, on lien claim filed October 6th, 1928.
L. Loveland Sons, Incorporated, has a judgment on mechanics' lien claim for $1,109.34, on lien claim filed December 12th, 1928.
The building was never completed; the mortgaged premises were sold pendente lite for $5,500.
Mrs. Di Fabio made her subordination agreements in consideration of complainant's agreement to pay the Di Fabio *Page 666 
mortgages out of the moneys to grow due to the mortgagor on the complainant's construction loan. This latter agreement was not recorded and is not referred to in the subordination agreements. Complainant paid Mrs. Di Fabio $800 on account of her mortgages, but no more. There is now due on the Di Fabio mortgages $4,200 and interest, aggregating upwards of $4,600.
Disregarding the Di Fabio mortgages for the moment, the mechanics' lien claimants admit that complainant's mortgage is superior to theirs to the extent of $3,413. Complainant claims to be entitled to priority to the extent of an additional $1,800 — of which $800 is the amount it paid Mrs. Di Fabio on her mortgage, and $1,000 is a sum paid to Otis Wright who furnished materials to the owner.
That complainant's mortgage is entitled to priority to the extent of $3,413, is admitted by all; it was proven that, of the moneys advanced by complainant on its mortgage, at least this amount actually went to the payment of labor and materials in the construction of the building — under section 15 of the Mechanics' Lien act.
Complainant paid to Otis Wright, who furnished lumber for the building, a total sum of $1,800. Eight hundred dollars of this is included in the $3,413 already mentioned — as being payment for lumber which went into the building in question. Testimony was offered by the lien claimants to show that the additional $1,000 was paid by complainant to Wright for materials used in other
houses being built by the owner at the same time that the house involved in this suit was being built. On the entire evidence, however, I am entirely satisfied that this $1,000 was paid for materials in the building in question, and that complainant is therefore entitled to priority to this additional amount.
It seems clear also that complainant is entitled to priority to the further extent of the $800 paid to Di Fabio. This $800 was paid on June 6th, almost an entire month prior to the inception of the lien of the lien claimants, who first furnished materials on July 4th or 5th. The debt of a lien claimant becomes a lien at the same instant it becomes a debt *Page 667 
— Stiles v. Galbreath, 69 N.J. Eq. 222 (at p. 235, bottom);affirmed, 71 N.J. Eq. 299 — but obviously he has no lien or other interest in the land before that time.
Under section 14 of the Mechanics' Lien act the lien claimant is given priority over the lien of an advance money mortgage, but "to the extent only of the moneys remaining to be advanced."
"Remaining to be advanced" at what time? The statute does not expressly say, but the only logical conclusion, from a consideration of all the pertinent statutory provisions and of the factors entering into the situation, seems to be that the date of the inception of the lien claimant's debt is the date which is meant.
The estate or interest in the lands and building which is acquired by the mechanics' lien claimant as security for his debt was specified by section 23 of the Mechanics' Lien act (Rev.1874), as "the estate which the owner had at the commencement of the building * * * subject only to all mortgages * * * created and recorded prior to the said commencement of the building." In the revision of the statute in 1898 that section was re-enacted as section 28, but with the important modification that the estate available to the mechanics' lien claimant shall be subject not only to mortgages created and recorded prior to the commencement of the building, but also subject to mortgages given and recorded "under the circumstances contemplated by and in conformity with the provision of section 14 or 15 of this act;" inferentially, "irrespective of whether or not they were given and recorded prior to the commencement of the building," unless the language of section 14 or 15 limits them in that respect.
Examining section 14 of the act, we find nothing said about the commencement of the building. It provides simply that the machinics' lien shall be prior to the lien of an advance money mortgage but to the extent only of the moneys remaining to be advanced. As to moneys already advanced the lien of the prior advance money mortgage retains its priority, provided "such mortgage shall be recorded * * * *Page 668 
before the filing of any [mechanics' lien] claim" — and this latter clause is still a further inferential indication that it matters not whether the mortgage was given and recorded, or the moneys advanced, prior to the commencement of the building.
From 1879 down to the Revision of 1898 the mechanics' lien claim was prior to any claim of an advance money mortgagee even for moneys actually advanced — P.L. 1879 p. 77 (except that byP.L. 1895 p. 313 § 6, the advance money mortgagee was given priority to extent that his advances went into the building; as is still provided by section 15 of the present act).
The change in 1898 can only be deemed to have been based upon a consideration of what was fair and just. No logical reason can be advanced in support of preferring a mechanics' lien over an advance money mortgage recorded, and on which the full amount has actually been advanced, before the lien claimant has done any work or furnished any materials. Before he does work or furnishes materials he has no interest in the lands or buildings or the mortgages thereon. As to him an advance money mortgage, on which the money has been advanced, whether it was advanced before or after the commencement of the building, is no different from a mortgage on which the loan was turned over in cash at the delivery of the mortgage. He does not have to do work or furnish materials for the building. If he is not willing to trust to the credit of the contractor, he must investigate the recorded mortgages to see if the equity remaining is sufficient for his protection, and if the advance money mortgage is already recorded he is in nowise misled, for he would not ordinarily know, without inquiry of the mortgagee, that it was an advance money mortgage — and on such inquiry he would also ascertain how much had already been advanced. It is in nowise unfair to him, therefore, to prefer the holder of a recorded mortgage to the extent of the moneys already advanced before the prospective lien claimant has any interest in the situation whatever.
No reason appears, therefore, for construing this statute *Page 669 
otherwise — there is nothing to justify importing into the statute a provision not expressed therein, and in nowise to be implied from the nature of the situation.
On the contrary, since by the provisions of the statute, the lien of the lien claimant is preferred to the advance money mortgage irrespective of whether that mortgage was given and recorded prior to the commencement of the building, it is a fair implication that the limitation of that preference (to the amount of moneys remaining unadvanced) should also be construed as irrespective of the commencement of the building.
Still further — it has been repeatedly held that the Mechanics' Lien act, at least in so far as it prefers lien claimants over other encumbrances — is to be strictly construed. Under such a construction, unless it be clear (which assuredly is not the fact) that the statute means to prefer the lien claimant over the claim of a mortgagee for moneys advanced prior to the inception of the lien claimant's interest, such a meaning cannot be accorded to it.
It is concluded, therefore, that the lien of the mortgagee, for moneys actually advanced to or for the mortgagor, before the inception of the lien claimant's debt, is superior to the lien claim, even though such advances did not go into the building; and the $800 paid to Di Fabio comes ahead of the Loveland claim.
(On this same ground, also, the additional $1,000 paid to Otis Wright would come ahead of the lien claim, even if the $1,000 had not gone into the building.)
The date of the inception of the debt due Brodhead Murphy does not appear — but the complainant's mortgage is superior to that claim also, by reason of a judgment in the mechanics' lien suit at law, which is res adjudicata.
Complainant's mortgage then is entitled to priority over the mechanics' lien claims, to the extent of at least $5,213, and since this sum, with the interest and costs, will exhaust the $5,500 proceeds of sale, it is unnecessary to consider the lien claims further.
The priority of the complainant's mortgage over the Di Fabio mortgage was by reason of subordination agreements *Page 670 
in return for which complainant agreed to pay off the Di Fabio mortgages out of the moneys to be advanced on complainant's mortgage. As between complainant and Di Fabio, therefore, Di Fabio is entitled to priority, either on the theory of failure of consideration, or on the theory of specific performance — compelling complainant to do that which it had agreed to do and should have done. This, indeed, complainant admits.
Distribution of the fund will be decreed as follows — first to complainant its costs and counsel fee as on an uncontested foreclosure of a $5,213 mortgage (including the amount paid for the court's transcript of testimony); second to Di Fabio, $4,200 and interest; third to complainant, the balance of the fund (and accretions of interest) on account of the principal of $5,213 and interest thereon. *Page 671