This action is on a bill to foreclose a mortgage held by Weinberger and Hartstein. The issue is as to the right of certain claimants under mechanics' liens to receive part of the proceeds of a sale of the mortgaged premises. Goldstein, one of the defendants, attempted to erect a building on the property and was unable to finance its completion. In the course of his operations several mortgages were placed upon the property. He later made a transfer of his equity to Slaff and Eichenbaum under an agreement in which the lien claimants joined, and which was expected to make possible the completion *Page 490 
of the building and its sale so as to pay the creditors. This attempt was unsuccessful. There was first a mortgage held by one Lobsenz which admittedly had priority above all other claims. The Lobsenz mortgage was foreclosed, and the premises were sold while the present action was pending. The lien claimants assert that their claims have a priority over the second mortgage held by the complainants, Weinberger and Hartstein, and over a third mortgage held by Samuel Slaff. They claim that the Weinberger and Slaff mortgages did not represent cash which went into the building and accordingly have no priority over the liens. These two mortgagees assert that the mechanics' liens filed are invalid and are subsequent to the two mortgages.
The lien claimants were not originally parties to either of the foreclosure actions. After filing their liens subsequent to the beginning of these actions they made application to the court for the permission to come in as parties. This application was granted by Chancellor Walker in the opinion which is reported in99 N.J. Eq. 1. On appeal this was affirmed on the grounds stated in his opinion in 101 N.J. Eq. 310. The opinion of Chancellor Walker sets forth the proceedings had in the two foreclosure actions and many of the relevant facts and these need not be repeated here.
By the decision of the chancellor the right was reserved to the mortgagees to establish any defenses they might have as against the lien claimants by way of waiver, extinguishment, laches, estoppel or fraud of any kind.
The remedy under the mechanics' lien alone is a statutory one and there must be a strict compliance with its terms. If the lien claimants or any of them did not furnish labor or materials within four months of the time of the filing of the lien, the lien is invalid.
In my opinion there was not a compliance with this provision of the lien law, pertaining to the time in which the lien claims must be filed. The testimony of the various lien claimants is wholly unconvincing and I am of the opinion from the testimony submitted that there was merely a pretense at furnishing materials and labor within the required *Page 491 
four months' period. Each of the lienors made a general statement that he had furnished materials or labor within the required time which was denied by the mortgagees. I think a fair consideration of all the evidence establishes beyond peradventure that in each case there was a failure of compliance with the requirements of the statute.
The lienors, Goldberg and Simon, filed their liens October 24th, 1924. To meet the requirements of the statute it was incumbent upon them to establish by competent proof that they performed labor or furnished materials on or after the 24th day of June, 1924. Rabinowitz and Schmidt filed their lien on November 1st, 1924. To meet the requirements of the statute it was incumbent upon them to establish that they performed labor or furnished materials on or after the 1st day of July, 1924. The same dates and requirements obtained as to the lienors, New Jersey Fire Escape Company and Paskewitz. Actinolite Company filed its lien on the 3d day of November and it was incumbent on it to show labor performed or materials furnished on or after the 3d day of July, 1924.
These contractors had previously interrupted their work and did so again when the Weinberger foreclosure action was started in May of 1924. Proceedings in this action were suspended for a time to give a chance to complete the building, and still the lien claimants did not proceed at that time. It is not claimed that any of them did any substantial amount of work within the four months' period, but each of the contractors asserts he did something within that time.
These circumstances are very persuasive as showing that their subsequent actions were not in good faith. A careful consideration of the testimony convinces me that such work alleged by the contractors to have been performed or the materials alleged to have been furnished within the required statutory period were merely colorable attempts to revive a lost right of lien. All the liens were filed after a meeting of the lien claimants in which the situation was discussed, and it appears but obvious that at least three of the lien claimants resumed the work they had already abandoned, *Page 492 
and that they did an inconsequential amount of labor in an endeavor to establish a record on which they could claim the validity of the liens filed soon thereafter by them.
Goldberg claims he did his last work on the 15th day of October. On this occasion he contends he performed work on a partition amounting in value to a few dollars. Slaff and Eichenbaum testified that Goldberg did his last real work on the job in the spring of 1924 and that only on being paid a substantial sum by them. On cross-examination it was shown that there had been erasures and alterations in his books relating to this job, and his testimony was unconvincing and contradictory. It seems obvious that the work done in October was done simply as an excuse for the filing of a lien.
Simon was required to show that he did work after June 24th and testified in his direct examination that he finished his work on June 20th which was more than four months before he filed his lien. He kept books on this job but did not produce them, although he did produce three cards which he claimed were time cards on the job and one of which of these shows a date as late as June 28th. He testified that he finished his work about the time tenants were moving into the building, which was shown by other testimony to have started as early as May, 1924. I do not consider that he has met the burden of proving by competent and credible testimony that he performed labor within four months of the filing of his lien.
Rabinowitz and Schmidt were required to show that they did work after July 1st. They claim they did some work on some brick piers on October 10th. This was long after they had quit work and was apparently done purely for the purpose of making an excuse for filing a lien. The work done by them on these piers was of a negligible amount and does not seem to have been a part of their original contract. Rabinowitz admitted at one point in his cross-examination that these piers were not within his contract or specification.
Paskewitz, apparently acting in concert with Goldberg and Rabinowitz, delivered some brick on October 10th, of *Page 493 
which some were used in building the pier. He had not delivered any brick previously since June 6th. This seems to be another attempt to make a delivery in order to allow the filing of a lien, otherwise lost.
New Jersey Fire Escape Company was required to show work after July 1st. The lien claimed here was for a balance of $2,250 on an original contract with Goldstein of $4,450, the difference, $2,200, having been paid long before the lien was filed. The Fire Escape Company claims that on September 9th, 1924, it delivered some iron beams on the order of Eichenbaum and Slaff. These were admittedly ordered by them and were billed to them in the sum of $145. It is obvious that there is no connection between the lien claim of $2,250 under the original Goldstein contract, and the bill for the beams, and that the beam transaction is simply being used as an excuse to revive the long lost right to a lien for the balance due on the original contract. The head of the fire escape company did not produce his books, stating that they had been stolen, but he admitted that they had been recovered and he did not explain their absence at the hearing.
Actinolite Company was required to show work performed after July 3d 1924. Its contract had been completed for almost a year and the only item claimed after July 3d was for labor and materials on July 11th in the amount of $28.88. This item was admittedly originally charged to Eichenbaum and Slaff and therefore had nothing to do with the original contract. The head of this concern changed the entry on its books on this item so as to make it appear as a charge against Goldstein and bring it under the original Goldstein contract.
The testimony regarding these lien claims is very confused and contradictory and the lien claimants themselves gave varying and self-contradictory versions of what they did. The facts as outlined above seem to be substantially admitted at some point in the record. At best from the standpoint of the lien claimants they show no substantial amount of labor or material within the four months before the filing of the respective liens, and in some of the cases they show a deliberate attempt to revive a dead lien claim by a *Page 494 
fictitious or nominal performance now claimed to have been under the original contract. Suspicion seems to attach to the good faith of all these claims as to the last time of performance.
I accordingly find that none of the lien claimants has satisfactorily proved the performance of labor or furnishing of material within the four months required by the statute and that these liens are accordingly invalid.
In this view because of the invalidity of the lien claims the question of the amount due to Weinberger or to Samuel Slaff under their respective mortgages is not in question.
I will advise a decree confirming the payment of the amounts found to be due by the special master to Weinberger and Hartstein and to Samuel Slaff, and discharging the said bond in the sum of $40,000 given to indemnify the lien claimants in case their claim should be found to be valid. *Page 495